**Dolores A. NEWBERRY et al.,
Plaintiffs-Appellants,**

v.

**R. A. WILLIS et al.,
Defendants-Appellees.**

**No. 80–7066.**

United States Court of Appeals,
Fifth Circuit.
Unit B

April 17, 1981.

Rehearing and Rehearing En Banc
Denied June 15, 1981.

---

Laughlin McDonald, Neil Bradley, Christopher Coates, Atlanta, Ga., Peggy Mastroianni, Atlanta, Ga., for plaintiffs-appellants.

Champion & Champion, Forrest L. Champion, Jr., Columbus, Ga., for defendants-appellees.

Before FAY, HENDERSON and HATCHETT, Circuit Judges.

HATCHETT, Circuit Judge:

Blacks and females of Talbot County, Georgia, appeal a trial court's failure to issue an injunction in a jury discrimination suit where, at the time of the judge's order, due to corrective action, the disparity for blacks was 6.5% and the disparity for females was 0%. We affirm.

In October, 1977, black and female residents of Talbot County, Georgia (appellants), filed suit against the county jury commissioners. The blacks and females claimed they had been prevented from serving as jurors because of their race or sex. In the trial court, the appellants sought (1) a declaration that the lists of grand and petit jurors were unconstitutionally composed, (2) an injunction against further use of the lists, and (3) preparation of new lists.

According to the 1970 census (excluding those over 65 years of age), blacks represented 64.5% and females represented 53% of the persons eligible to serve on juries in Talbot County. Appellants alleged in their complaint that from November 10, 1975, to November 14, 1977, 146 persons were summoned for grand jury service; of these 146 persons, forty-one (28%) were blacks and thirty-three (22.6%) were females.

With regard to the petit jury venire, appellants alleged that of the 107 persons serving on the November 21, 1977, petit jury venire, forty-eight (44.8%) were blacks and fifty (46.7%) were females.

The figures alleged by appellants showed a 36.5% absolute disparity between the number of blacks eligible to serve on the grand jury and the number of blacks on the grand jury list. The figures alleged also showed a 30.4% absolute disparity between the number of women eligible for grand jury service and the number of women included on the grand jury list. Under the comparative differential method, blacks were under-represented by 43.4% and women under-represented by 42.6% on the grand jury list.

In answer, the jury commissioners neither admitted nor denied the grand jury figures alleged by appellants. The jury commissioners asserted, however, that blacks comprised 33.5% and females comprised 36% of the 1977 grand jury list. The jury commissioners admitted that the 1977 petit jury figures alleged by appellants were accurate.

In answers to the appellants' interrogatories, the jury commissioners admitted that in 1977 blacks comprised 45% and females comprised 43.5% of the petit jury list; the answers further admitted that in 1977, blacks comprised 33.4% and females comprised 36% of the grand jury list.

On May 8, 1978, in an amended answer, the commissioners alleged that effective May 5, 1978, they had compiled a new petit jury list and box consisting of 838 persons, of whom 450 (53.7%) were blacks and 455 (54.3%) were females. The commissioners further alleged that they had compiled a new grand jury list and box consisting of 323 persons of whom 177 (54.8%) were blacks and 156 (48.3%) were females. The commissioners suggested that these efforts to make the jury list of Talbot County a more representative cross-section of persons suitable for jury duty should militate against any remedial action by the trial court.

Instead of requesting a hearing to prove the figures alleged, the appellants, in October 1978, moved for summary judgment. The commissioners opposed the motion on the ground that the new jury lists were not unconstitutionally composed. They pointed to the fact that the absolute race deviation in the petit jury box equalled 10.8% and the sex deviation equalled zero. Regarding the grand jury box, the race absolute deviation equalled 9.7% and the sex absolute deviation equalled 4.7%.

In January, 1979, appellants filed a supplemental complaint, alleging that the recompiled jury lists did not conform with a state court order. On this basis, appellants insisted that the federal trial court enter an injunction. In response to the appellant's amended complaint, the commissioners admitted that the jury lists were not revised according to the state court order. The commissioners, however, requested the federal trial court to enter an order allowing the Georgia Superior Court to direct the revision of the jury lists and boxes. The federal trial court, noting that the appellants interposed no objection to the commissioners' suggestion entered an order allowing the suggested action. The appellants took no action on this order.

In February, 1979, the commissioners advised the trial court that the jury lists had been revised in accordance with the state court order. They stated that the revision resulted in a petit jury list containing 940 names, 545 (58%) blacks and 498 (53%) females. The commissioners further advised that the second revision of the grand jury list contained 274 names, of which 159 (58%) were blacks and 145 (53%) were females. The remaining disparity for blacks was 6.5% using the absolute method, and 10.07% using the comparative method on the grand and petit jury lists. No disparity existed for females under the second revision.

In objecting to the commissioners' report to the court, appellants alleged that because blacks were still under-represented on the current grand and petit jury lists, the lists were insufficient as a remedy for past exclusion. In addition, the appellants stated

that the report failed to describe the procedures and standards utilized in recompiling the lists. Consequently, the appellants requested that the court reject the commissioners' report and issue an injunction, or in the alternative, grant appellants a full hearing to inquire into the procedures and standards followed in recompiling the jury lists.

In December, 1979, the trial court filed its opinion and order. The court noted initially that the parties had "agreed that appropriate judgment may be entered by the court based on the record which has been developed." Thereafter, the trial court found that the reconstituted grand and traverse jury lists were composed of 58% blacks and 53% females. The court noted that:

> The percentage of women on the jury list is 0.6% less than would be indicated if compared to the percentage of women on the voter registration list and is exactly the same percentage that would be indicated if comparison is made with the percentage of women eligible for jury service, and the percentage of blacks on the jury list is 7.4% greater than would be indicated if compared to the percentage of blacks on the voter registration list and is 6.5% less than would be indicated if compared to the percentage of blacks eligible for jury service.

On the basis of these figures, the trial court found that the disparity remaining between blacks eligible for jury service and blacks included on the grand and petit jury lists was "negligible." It further found that the jury lists in Talbot County "accord fair representation for blacks and women and that the facts in this case would not warrant the entry of an order requiring the defendant jury commissioners to compile new lists." The trial court also found that the procedures and standards for compiling the jury list were "adequate to insure that the list will hereafter meet acceptable standards, thus making it unnecessary for the court to 'establish' procedures."

Appellants contend that the trial court applied the wrong standard in determining that the 6.5% disparity remaining for blacks

after the second revision was "negligible." They assert that the trial court judged the case by the proof required to show a prima facie case rather than by the higher standard governing the adequacy of the remedy.

The issue to be decided on this appeal is whether the trial court erred in denying appellants injunctive relief.

Appellants' argument assumes that they established a prima facie case of discrimination. According to the appellants' theory, once a plaintiff has made an unrebutted prima facie showing of discrimination, the court will exact a high standard of comparability in fashioning a remedy in order to insure that the past effects of discrimination will be eliminated. Appellants assert that because they established an unrebutted prima facie case of discrimination, the high standard of comparability will not tolerate a 6.5% disparity among blacks. This is true, they assert, particularly in light of the fact that the first revised list was improperly composed, the commissioners failed to explain the reason for the disparity remaining after the second revision, and the commissioners failed to outline the procedures and standards for revising the jury lists.

We agree with the appellants' statement of the law. Once a plaintiff establishes a prima facie case of jury discrimination which goes unrebutted, corrective action may be required. In considering the degree of corrective action required, "the court may exact from officials responsible for the construction of the jury list a high standard of comparability between demographic percentages and those of the jury list." *Berry v. Cooper*, 577 F.2d 322, 327 (5th Cir. 1978) (quoting *Broadway v. Culpepper*, 439 F.2d 1253, 1259 (5th Cir. 1971)). In exacting this high standard of comparability, a disparity which would be insufficient to prove substantial under-representation in the first instance may be sufficient to require additional corrective action after an unrebutted prima facie case of jury discrimination has been established. *Cf. Porter v. Freeman, Inc.*, 577 F.2d 329 (5th Cir. 1978) (8.8% disparity remaining

after a prima facie case had been established warranted additional corrective action).

■ While we agree with appellants' statement of the law, we disagree with their assertion that the trial court should have judged this case as a case where the plaintiffs had established an unrebutted prima facie case of jury discrimination. To establish a prima facie case of discrimination, a plaintiff must show that:

(1) The group allegedly discriminated against is a recognizable distinct class singled out for special treatment under the laws, as written or as applied.

(2) The group has been substantially under-represented on jury panels over a significant period of time.

(3) The selection procedure is not racially neutral or susceptible to being used as a tool of discrimination. *United States v. Lopez*, 588 F.2d 450 (5th Cir.), *cert. denied*, 442 U.S. 947, 99 S.Ct. 2895, 61 L.Ed.2d 319 (1979). Unquestionably, the plaintiffs alleged racial disparities during a two-year period regarding the composition of the grand jury lists which would have established a prima facie case of jury discrimination, if proved. The commissioners, however, neither admitted nor denied these figures. The appellants never sought to prove the allegations, but rather agreed to a revision of the lists.

■ With regard to the petit jury list, appellants alleged a disparity which indicated that blacks were substantially under-represented, but no significant time period was either alleged or proved. Under these circumstances, no prima facie case of jury discrimination was shown. As a result, no high standard of comparability was required. The trial court properly held that a 6.5% disparity was negligible. *United States v. Butler*, 611 F.2d 1066 (5th Cir.), *cert. denied*, —— U.S. ——, 101 S.Ct. 97, 66 L.Ed.2d 35 (1980).

Any shortcomings in the trial court order are the result of the manner in which appellants allowed the case to proceed. Appellants acquiesced to the revision of the grand and petit jury lists on two occasions so as to include a more representative cross-section of the community on the jury lists. From appellants' acquiescence, we must infer a willingness to settle this matter without the force and effect of an injunction. Appellants received all of the relief that they insisted upon when the trial court declined to enter an injunction and approved the 6.5% absolute disparity remaining between blacks eligible to serve on the grand and petit juries and blacks included on the grand and petit jury lists.

Our conclusion is buttressed by the fact that appellants do not here question the procedures or standards utilized by the commissioners in achieving the zero disparity for females. The same standards and procedures were utilized in achieving the 6.5% disparity remaining between eligible black jurors and blacks included on the grand and petit juror lists as were used for females.

Finally, we note that while the trial court's order of dismissal must be affirmed, any further relief for deprivations occurring after the date of the trial court's order may be addressed by a new suit.

The trial court did not err in denying plaintiffs injunctive relief. Accordingly, the trial court's order of dismissal is affirmed.

AFFIRMED.