**UNITED STATES of America**

v.

**Santiago ALVAREZ, Osvaldo Mitat.**

**No. EP–07–CR–088–DB.**

United States District Court,
W.D. Texas,
El Paso Division.

June 11, 2007.

David B. Deitch, U.S. Department of Justice, Washington, DC, for Plaintiff.

## *MEMORANDUM OPINION AND ORDER*

BRIONES, District Judge.

On this day, the Court considered Defendant Santiago Alvarez's "Motion To Dismiss Indictment And Incorporated Memorandum of Law," filed in the above-captioned cause on February 5, 2007. The Court also considered Defendant Osvaldo Mitat's "Motion To Dismiss Indictment And Incorporated Memorandum Of Law" filed in cause number EP–07–CR–089–DB, on February 5, 2007. On February 12, 2007, the Government filed an "Opposition to Defendants' Motions to Dismiss the Indictments" ("Response").[1] On May 10, 2007, the Court entered an Order consolidating Defendant Alvarez's and Defendant Mitat's causes of action into the above-captioned cause. After due consideration, the Court is of the opinion that the instant Motions should be denied for the reasons that follow.

## BACKGROUND

On December 14, 2006, Defendants were subpoenaed to testify before a federal grand jury, in El Paso, Texas,[2] investigating Luis Posada Carriles's ("Posada") entry into the United States.[3] Specifically, the grand jury investigation concerned whether Posada made false statements to federal officials in connection with his attempted entry and naturalization.[4] Defendants filed a Motion to Quash the subpoena, and requested an evidentiary hearing the day before their scheduled appearance. Defendants intended to proffer evidence that would substantiate their defense of fear of foreign prosecution by Cuba, Mexico, Panama, or Venezuela for participating in alleged terrorist activities including: the alleged plot to bomb a Havana, Cuba night club, the downing of a Cuban jetliner over Venezuela, the attempted assassination of Fidel Castro, and other anti-Castro activities.[5] The Court held a hearing on January 11, 2007, where Defendants were present and represented by counsel. The Court dismissed Defendants's Motion to Quash, granted the Government's application for immunity and issued an Order compelling Defendants's testimony pursu-

---

1. The Government filed identical Indictments in two separate causes of action against Defendant Santiago Alvarez in EP–07–CR–088–DB, and Defendant Osvaldo Mitat in EP–07–CR–089–DB. Defendants filed Motions to Dismiss, proffering identical legal arguments. The Government filed a single Response to both Motions.

2. In addition to Defendants, the Government also subpoenaed Jose Pujol, Ruben Lopez–Castro, and Ernesto Abreu.

3. Posada, a 79–year–old Cuban national, has been continually engaged in anti-Castro activ-

ities. In March, 2005, Posada entered the United States, and sought asylum.

4. The Government suspected that Posada, along with Pujol, Lopez–Castro, Abreu, and Defendants Alvarez and Mitat, entered the United States illegally, aboard a sea vessel named the Santrina.

5. Posada is wanted by various law enforcement entities in connection with these alleged crimes.

ant to Title 18 U.S.C. §§ 6002 and 6003.[6]

Despite the Court's Order, Defendants invoked their Fifth Amendment right against self incrimination, citing fear of retaliation and foreign prosecution, and refused to testify. Further, Defendants argued that the subpoenas constituted an attempt to subject them to a perjury trap. The Court found Defendants in civil contempt,[7] and scheduled them for a show cause hearing on February 15, 2007, five days before the grand jury's term was scheduled to end. Also on January 11, 2007, Defendants were taken before the grand jury and neither complied with the Court's Order to testify. That same day, the grand jury returned separate one-count Indictments charging Defendants with criminal contempt, in violation of Title 18 U.S.C. § 401.[8] The Court deemed the show cause hearing moot and it was canceled after the Defendants were indicted. The instant Motions followed.

## DISCUSSION

Through the instant Motion, Defendants move to dismiss the Indictments on four grounds. First, Defendants contend that the Government violated their rights to due process and equal protection under the law for failure to hold a show cause hearing. Second, Defendants assert a fear of foreign prosecution defense. Third, Defendants argue the Government knowingly created a perjury trap. Fourth, Defendants allege prosecutorial misconduct, and seek to compel proof that the Indictments comply with Federal Rule of Criminal Procedure 6(c). In its Response, the Government contends that criminal contempt is distinct from civil contempt, because the crime is complete upon disobedience of the lawful Court Order. Next, the Government states that it did not create a perjury trap as it sought relevant testimony concerning a legitimate grand jury investigation. The Government further challenges Defendants's fear of foreign prosecution defense by arguing that none exists, as Defendants's argument is based on dicta from *United States v. Balsys*, 524 U.S. 666, 118 S.Ct. 2218, 141 L.Ed.2d 575 (1998). Finally, the Government responds to Defendants's prosecutorial misconduct contention by showing that the original Indictments contain the foreperson's signature and were sealed pursuant to the E–Government Act of 2002. The Court agrees with the Government, and shall address each of Defendants's arguments in turn.

### A. Due Process and Equal Protection

Defendants assert that the failure to hold a show cause hearing violated their Due Process and Equal Protection rights because it denied them the opportunity to purge their civil contempt. Defendants specifically argue that the criminal Indictments would not have been issued if they had been afforded the opportunity to testify after thoughtful consideration. The

---

**6.** At the time of the Court's Order, Defendants were, and continue to remain, in federal custody serving sentences of imprisonment that stem from convictions in the Southern District of Florida, cause number 05–CR–60307–JIC.

**7.** The Court notes that confinement under civil contempt may not have had its intended affect as Defendants were then serving federal sentences.

**8.** The grand jury also returned a seven-count indictment against Posada in cause of action EP–07–CR–087–KC. On May 8, 2007, United States District Judge Kathleen Cardone granted Posada's Motion to Suppress Evidence and dismissed Posada's indictment. Likewise, the grand jury returned separate one-count indictments against Pujol, Lopez–Castro and Abreu, charging criminal contempt of court. The causes of action against Pujol, Lopez–Castro and Abreu remain pending.

Government responds that Defendants confuse the distinction between civil and criminal contempt, and due process does not require an opportunity to purge under criminal contempt proceedings. The Court agrees with the Government because the law is well settled as to the distinct nature among civil and criminal contempt proceedings.

■ A criminal contempt proceeding, by its very nature, is dissimilar to a civil proceeding. *Yates v. United States*, 355 U.S. 66, 74, 78 S.Ct. 128, 2 L.Ed.2d 95 (1957). Civil and criminal contempt authority serve distinct purposes; the former is coercive, and the latter is punitive and deterrent. *Id.* (citing *Rex Trailer Co. v. United States*, 350 U.S. 148, 150, 76 S.Ct. 219, 100 L.Ed. 149 (1956)). "Civil contempt is designed to force the [disobedient party] to comply with an order of the court." *Willy v. Coastal Corp.*, 503 U.S. 131, 139, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992). The purpose under criminal authority is to punish the recalcitrant witness's disobedience. *United States v. Marquardo*, 149 F.3d 36, 39 (1st Cir.1998). The option available under civil contempt authority is utilized for the benefit of the contemnor. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994). Whereas confinement under criminal contempt serves to vindicate the disobedience of the court's lawful order. *Yates*, 355 U.S. at 72, 78 S.Ct. 128. Therefore, where the contemnor finds himself under civil contempt, compliance with the court order purges his civil contempt. *See Shillitani v. United States*, 384 U.S. 364, 368, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966).

■ The difference between civil and criminal contempt is not the contemnor's conduct, rather, it is the manner in which the court seeks to remedy that disobedience. *See, e.g., Yates*, 355 U.S. at 74, 78 S.Ct. 128. Courts are directed to first consider the utility under civil contempt authority to elicit testimony. *See Shillitani*, 384 U.S. at 372 n. 9, 86 S.Ct. 1531; *Yates*, 355 U.S. at 74, 78 S.Ct. 128. Then, courts are to resort to criminal contempt after determining that civil coercion would be inappropriate. *Shillitani*, 384 U.S. at 372 n. 9, 86 S.Ct. 1531. However, disposition of the civil contempt proceeding is not a prerequisite to commencement of the criminal contempt proceeding. *See, e.g., Petroleos Mexicanos v. Crawford Enter., Inc.*, 826 F.2d 392, 398 (5th Cir.1987) (citing *United States v. United Mine Workers*, 330 U.S. 258, 299, 67 S.Ct. 677, 91 L.Ed. 884 (1947) (permitting a court to conduct civil and criminal contempt proceedings simultaneously)). This is so because the offense of criminal contempt is complete at the moment of the witness's refusal to obey the court order. *Ochoa v. United States*, 819 F.2d 366, 369 (2d Cir. 1987). "Indictment, conviction, and punishment may be based on this refusal." *Id.* (citing *United States v. Petito*, 671 F.2d 68, 73 (2d Cir.1982)).

■ The decision to invoke either civil or criminal contempt is within the sound discretion of the trial court. *United States v. Wilson*, 421 U.S. 309, 316–17, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975). Moreover, the court is not required to initiate the prosecution of criminal contempt, rather, the witness may be indicted by a prosecuting attorney. *See United States v. Williams*, 622 F.2d 830, 838 (5th Cir.1980) (en banc) (per curiam) (discussing an indictment issued by the prosecuting attorney after a defendant violated a condition of her release order).

■ Further, even upon the recalcitrant witness's compliance, the court is not proscribed from conducting criminal contempt proceedings. *See Marquardo*, 149

F.3d at 40 ("Had he complied ... the civil commitment would have become automatically ineffective, yet he would still have been subject to a criminal contempt because that offense was consummated once he willfully failed to comply with the [ ] order."). A single act of disobedience constitutes an "initial commission" of a crime. *See United States v. Ward*, 757 F.2d 616, 620 (5th Cir.1985).[9] The initial commission of a crime commences at the time of the contumacious behavior. *See, e.g., Williams*, 622 F.2d at 838 (stating that the statute of limitations begins to run at the time the act occurred). That is so, because the crime of contempt becomes complete "when the contumacious conduct has taken place." *Marquardo*, 149 F.3d at 39. However, commencement of criminal contempt requires that the recalcitrant witness be afforded due process under the law equivalent to other criminal defendants. *See Bagwell*, 512 U.S. at 826–27, 114 S.Ct. 2552.

■ Here, the dispositive issue is the appropriate characterization of the instant Indictments. The Court first held Defendants in civil contempt to modify their disobedient behavior, and set the matter for a show cause hearing.[10] However, that same day, the grand jury indicted Posada, and thereby mooted the need for Defendants's testimony. *See Shillitani*, 384 U.S. at 371, 86 S.Ct. 1531 (holding expiration of the grand jury term terminates the opportunity of the witness to purge himself of civil contempt); *Port v. Heard*, 764 F.2d 423, 427 (5th Cir.1985) ("[T]he mootness of contempt judgments turn ... on the presence *vel non* of a live controversy."). Posada's indictment terminated the Court's civil contempt authority and likewise ceased Defendants's civil confinement. As such, Defendants did not need to purge their contempt as they were not in civil contempt of court.

Further, the instant Indictments do not seek to modify Defendants's noncompliant behavior.[11] Rather, the purpose of the Indictments are to punish Defendants for their past disobedience. Thus, as the Indictments seek to "vindicate the authority of the court," they are properly characterized as criminal in nature. *See Karaha Bodas Co. v. Negara*, 335 F.3d 357, 375 (5th Cir.2003) (citing *In re Hunt*, 754 F.2d 1290, 1293 (5th Cir.1985)). As such, the Court finds that Defendants must be afforded due process as required in a criminal jury trial, not for civil contempt. *Harris*, 382 U.S. 162, 165–66, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965); *see, e.g., Bagwell*, 512 U.S. at 826–27, 114 S.Ct. 2552.

■ Prosecution of criminal contempt must proceed pursuant to Federal Rule of Criminal Procedure 42(a). *See* FED.R.CRIM.P. 42. Notice must be provided to Defendants in one of three ways: orally in open court, in an order to show cause, or in an arrest order. FED. R.CRIM.P. 42(a)(1); *Harris*, 382 U.S. at 165–66, 86 S.Ct. 352. The notice must include the time and place of trial, provide

---

**9.** This does not concern a situation where repeated refusals to testify are separately indicted. *See Yates*, 355 U.S. at 68, 78 S.Ct. 128 (holding that a series of separate refusals to testify to the same line of questioning constitute a single act of contempt).

**10.** The Court notes that confinement for civil contempt in January, 2007 would not have its intended affect as Defendants were already serving federal sentences.

**11.** The Court is not concerned with "summary criminal contempt" because the refusal to testify was not before the Court. Rather, the Defendants's contumacious behavior was before the grand jury. *See* FED.R.CRIM.P. 42(b); *see also Harris v. United States*, 382 U.S. 162, 164–65, 86 S.Ct. 352, 15 L.Ed.2d 240 (discussing "Summary Disposition" as it existed in 1965, codified as Rule 42(a)).

a reasonable time to prepare a defense, and state the essential facts. FED. R.CRIM.P. 42(a)(1)(A), (B) & (C). Here, the Indictments expressly charge Defendants with violation of Title 18 U.S.C. § 401(3) for failure to testify to the grand jury in its investigation into cause number EP–06–CR–1045–DB, and their further refusal to testify following the Court's Order. The instant cause has been set for trial and Defendants will be represented by counsel, have the opportunity to assert a defense, and call witnesses, if they so choose. *See Cooke v. United States,* 267 U.S. 517, 537, 45 S.Ct. 390, 69 L.Ed. 767 (1925). The fact that Defendants were indicted the same day as Posada is not persuasive, nor does it indicate a denial of due process.[12] Further, the Court notes that there is no mandate that a recalcitrant witness must first be afforded an opportunity to purge himself of civil contempt prior to a finding of criminal contempt. *See United Mine Workers,* 330 U.S. at 299, 67 S.Ct. 677. As stated above, Defendants's refusal to testify gave rise to separate civil and criminal contempt charges, and Rule 42 was designed to notify Defendants of that fact. *See id.* at 298–99, 67 S.Ct. 677. Defendants committed criminal and civil contempt of court simultaneously, and any subsequent attempt to purge themselves would be ineffective as to erase their criminal conduct. *See United States v. Monteleone,* 804 F.2d 1004, 1007 (7th Cir.1986). Thus, the Court finds that Defendants need not be afforded a hearing to purge themselves of civil contempt. Therefore, the Court is of the opinion that Defendants have been afforded due process as required under the criminal contempt statute.

■ Last, Defendants argue that they were denied equal protection under the law. Specifically, that three other witnesses (Pujol, Lopez–Castro and Abreu) were called before the same grand jury, refused to testify under nearly identical facts, but were first afforded a show cause hearing prior to their respective Indictments for criminal contempt. The record reveals two important facts that demonstrate that Defendants and are not similarly situated in comparison with Pujol, Lopez–Castro and Abreu. *See, e.g., City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) ("[A]ll persons similarly situated should be treated alike."). First, at the time of the contumacious behavior, Defendants were serving federally imposed sentences, whereas the other three witnesses were not incarcerated. This tends to show that the Court's threat of immediate civil confinement provided little, if any, coercive affect when Defendants were already incarcerated serving approximately three-and four-year prison terms. *See Wilson,* 421 U.S. at 317 n. 9, 95 S.Ct. 1802. Next, as stated above, the Court's civil contempt authority terminated the same day that the Defendants and Posada were criminally indicted. When the Court held the show cause hearings for Pujol, Lopez–Castro, and Abreu, the Court then possessed full civil contempt authority. Therefore, Defendants were not denied equal protection under the law because the other contemnors were not similarly situated. Thus, Defendants's instant Motions should be denied.

## B. Fear of Foreign Prosecution

■ Defendants's fear of foreign prosecution defense has been expressly fore-

---

**12.** Neither is it a dispositive fact that the Indictments were filed within two (2) minutes of each other. Defendant Alvarez's Indictment was filed on January 11, 2007 at 2:05 p.m. Defendant Mitat's Indictment was filed on January 11, 2007 at 2:06 p.m. Lastly, Posada's indictment was filed on January 11, 2007 at 2:07 p.m.

closed by the United States Supreme Court and the Fifth Circuit. Defendants accurately state that the Supreme Court proscribed this defense when asserting the right against self incrimination. *See Balsys*, 524 U.S. at 674, 118 S.Ct. 2218. However, Defendants cite only dicta to argue that the defense may exist. *See id.* at 698–99, 118 S.Ct. 2218. Defendants omit vitally important language that expressly forecloses this authority as purely dicta and not *stare decisis. See id.* at 699, 118 S.Ct. 2218 ("Whether such an argument should be sustained may be left at the least for another day, since its premises do not fit this case."). Thus, the *Balsys* Court did not create an exception, rather it posed a hypothetical question, and expressly denied the defense asserted by Defendants in the instant case. *See id.* at 669, 118 S.Ct. 2218.

Additionally, the Fifth Circuit expressly proscribes a grand jury witness from asserting a fear of foreign prosecution defense. *United States v. Brummitt*, 665 F.2d 521, 525 (5th Cir.1981). In *Brummitt*, the Fifth Circuit upheld a criminal conviction of Mr. Brummit for twice failing to testify to the grand jury, claiming fear of foreign prosecution. *Id.* at 523. After Mr. Brummitt refused to testify the first time, he was found in civil contempt and placed in confinement for four months. *Id.* Then, Mr. Brummitt was charged with criminal contempt under 18 U.S.C. § 401(3), after he refused to testify a second time. *See id.* The Fifth Circuit reaffirmed that Mr. Brummitt's fear, that his testimony would be leaked to authorities from the Mexican Government, was unfounded. *See id.* at 525–26.

Defendants further omit the line of reasoning envisioned by the *Balsys* Court.

The Supreme Court hypothesized that a case may arise when a sovereign nation would effectively become the agent of another sovereign nation to prosecute crimes common to both nations. *See Balsys*, 524 U.S. at 698–99, 118 S.Ct. 2218. Therefore, if the Court were to entertain such a defense, Defendants must satisfy an initial burden that the United States shares an equal level of cooperative prosecution with a foreign government. *See id.* Moreover, *Balsys* foresaw more than commonality of crimes, but an agency relationship between the two sovereignties. *See id.* The appropriate scenario would be that the Government granted Defendants immunity to elicit testimony regarding Posada's entry, so that Cuba, Mexico, Panama or Venezuela would prosecute Defendants for their illegal entry into the United States. *See id.*

The instant facts show that Defendants fear prosecution by Cuba, Mexico, Panama or Venezuela for alleged terrorist activities.[13] The facts also show that the grand jury was investigating violations of United States immigration laws. It is evident that the two crimes are not common. *See id.* at 698, 118 S.Ct. 2218 (stating the hypothetical scenario must involve transfer of information for the prosecution of common crimes). The Court goes one step further, and examines the crime alleged under the instant Indictments. As detailed above, Defendants are charged with criminal contempt of court. The instant crime is not common to the alleged terrorist crimes for which Defendants claim they face foreign prosecution. Although Defendants recite the *Balsys* commonality requirement verbatim, they neglect to show a similarity between the crime under investigation and the prosecution for which, they aver, awaits them in Cuba, Mexico,

---

**13.** The activities include the following: a plot to bomb a Havana, Cuba night club, the downing of a Cuban jetliner over Venezuela, the attempted assassination of Fidel Castro, and other anti-Castro activities.

Panama or Venezuela. Further, Defendants make no attempt to demonstrate an agency relationship between the United States and the governments of Cuba, Mexico, Panama or Venezuela. *Id.* at 699, 118 S.Ct. 2218. Even where one nation supports the prosecutorial efforts of another, the *Balsys* Court holds that such support is insufficient to rise to the level required under this hypothetical question of "cooperative prosecution." *Id.* Thus, the Court finds that Defendants have not satisfied their burden to demonstrate a level of cooperative prosecution to raise a fear of foreign prosecution defense. Therefore, the Court is of the opinion that there is no similarity between the indicted crime and any crimes under the criminal codes of Cuba, Mexico, Panama, or Venezuela and Defendants's Motions should be denied.

### C. Perjury Trap

■ The Court next addresses Defendants's perjury trap argument. Defendants aver that the Government's subpoena was a "premeditated design" which "sole or primary purpose" was to obtain an indictment for perjury or contempt. Next, Defendants contend that a third witness, Gilberto Abascal,[14] provided the grand jury sufficient information to make a decision whether to indict Posada, rendering Defendants's testimony redundant or contradictory. Last, Defendants allege the Government purposely intended to exceed the scope of the grand jury investigation. In its Response, the Government simply proffers that the argument holds no merit in law or fact. The Fifth Circuit has not recognized the perjury trap doctrine, nor do Defendants rely upon Fifth Circuit caselaw in support of their argument. However, the Seventh, Second, and Ninth Circuits have been directly presented with the perjury trap argument and all three declined to adopt the doctrine. *See, e.g., United States v. Burke,* 425 F.3d 400, 408 (7th Cir.2005); *United States v. Regan,* 103 F.3d 1072, 1079 (2d Cir.1997); *United States v. Chen,* 933 F.2d 793, 797 (9th Cir.1991). The Court finds Defendants's arguments unconvincing and inapplicable to the instant facts.

■ A perjury trap is established upon a showing that the Government subpoenaed a witness for the primary purpose of eliciting testimony which the Government will later prosecute for perjury. *See Chen,* 933 F.2d at 796. However, if information is sought, which is useful to a legitimate investigation, that scenario renders the perjury trap doctrine inapplicable. *See id.* at 797. Here, the grand jury was investigating whether Posada lied about his entry into the United States. The grand jury sought information concerning Posada's entry by sea, and the Government suspected that Defendants accompanied Posada, and thus held actual knowledge of the entry. Not only were Defendants called to testify, but the Government also subpoenaed Pujol, Lopez–Castro, and Abreu, whom were also suspected to have been aboard the vessel at the time of entry.

■ Defendants's argument that their testimony may have been redundant is not dispositive evidence of any misconduct. Nor is the timing of the Indictments dispositive evidence of misconduct. "A grand jury investigation is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed." *United States v. Vesich,* 724 F.2d 451, 460 (5th Cir.1984) (quoting *Branzburg v. Hayes,* 408 U.S. 665, 701, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972)) (discuss-

---

**14.** The record contains no information regarding the identity nor Abascal's role in the instant case, beyond the allegations set forth in Defendants's Motions.

ing a defendant's conviction for obstructing justice and perjury).

Here, the burden of proof is squarely upon Defendants to prove that the primary purpose of their testimony before the grand jury was to induce perjury. *See Chen,* 933 F.2d at 796. The Government sought eye-witness testimony relevant and potentially significant to the grand jury investigation into Posada's entry into the United States. *See, e.g., United States v. Williams,* 874 F.2d 968, 974 (5th Cir.1989). Any potential questions not directly relevant to the false claim matter would have been ancillary to the primary purpose of the grand jury. Thus, the Court finds that Defendants have not satisfied their burden to show that the primary purpose of the subpoenas was to induce Defendants to commit perjury. Therefore, the Court is of the opinion that the Government did not create a perjury trap and Defendants's Motions should be denied.

### D. Prosecutorial Misconduct

▮▮▮▮ The Court now turns to Defendant's final argument, that the absence of the foreperson's signature from the Indictments evinces prosecutorial misconduct. The Government responds that the original Indictments contain the necessary signatures but the copies released to the public are redacted pursuant to the E–Government Act of 2002. 44 U.S.C.A. § 3501, *et seq.* (West Supp.2007). Defendants concede that a missing signature is not fatal. *See United States v. Marshall,* 910 F.2d 1241, 1243 (5th Cir.1990). Nevertheless, Defendants argue that *Renigar v. United States,* 172 F. 646, 650 (4th Cir. 1909), stands for the proposition that a missing signature indicates other irregularities in the Indictment. While the public is provided only redacted versions of documents, the record shows that Defendants's Indictments contain the fore-

person's signature. *See United States v. Thompson,* 454 F.3d 459, 464 n. 3 (5th Cir.2006). Here, Defendants do not allege other prerequisites to the Indictment are unsatisfied. As such, logic provides that there is no evidence to support Defendants's conclusory allegation that the redacted Indictments infer prosecutorial misconduct. Thus, the Court is of the opinion that Defendants's argument is without merit and the Motions should be denied.

### CONCLUSION

In light of the foregoing, the Court is of the opinion that Defendants's instant Motions should be denied. First, Defendants's refusal to testify immediately gave rise to criminal contempt proceedings which were indictable by a prosecuting attorney. Further, Defendants's opportunity to purge themselves of civil contempt terminated when Posada was indicted. Defendants's have been afforded due process as required under Rule 42. Likewise, the facts surrounding the instant case show that they are not similarly situated to the other recalcitrant witnesses—Pujol, Lopez–Castro, and Abreu—such that they were not denied equal protection under the law.

Next, Defendants's contention that the fear of foreign prosecution exception, enumerated in *Balsys,* applies to the instant facts is without merit. Notwithstanding that *Balsys* is dicta and that the Supreme Court and the Fifth Circuit expressly proscribe its invocation, Defendants have not sufficiently demonstrated the level of cooperative prosecution necessary to assert a fear of foreign prosecution defense.

Last, the record shows that both Indictments contain the signature of the foreperson, and thus, Defendants prosecutorial misconduct complaint is without merit. As such, the inference that the Government

engaged in prosecutorial misconduct cannot stand where all procedural requirements to the Indictment are satisfied. Therefore, the Court is of the opinion that the instant Motions should be denied.

Accordingly, **IT IS HEREBY ORDERED** that Defendant Santiago Alvarez's "Motion To Dismiss Indictment And Incorporated Memorandum of Law" is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant Osvaldo Mitat's "Motion To Dismiss Indictment And Incorporated Memorandum of Law" is **DENIED.**