In re GRAND JURY SUBPOENA OF Martin FLANAGAN.

UNITED STATES of America, Appellant,

v.

Martin FLANAGAN, Appellee.

No. 82 Docket 82–6058.

United States Court of Appeals, Second Circuit.

Argued Sept. 16, 1982.
Decided Oct. 13, 1982.

Mary McGowan Davis, Asst. U. S. Atty., Brooklyn, N. Y. (Edward R. Korman, U. S. Atty., for the Eastern District of New York, Brooklyn, N. Y., of counsel), for appellant.

Richard Ware Levitt, New York City (Joel B. Rudin, Rudin & Levitt, New York City, of counsel), for appellee.

Before MANSFIELD, VAN GRAAFEILAND and NEWMAN, Circuit Judges.

MANSFIELD, Circuit Judge:

The government appeals pursuant to 18 U.S.C. § 3731 from an order of the Eastern District of New York, Joseph M. McLaughlin, *Judge,* denying its motion to hold Martin Flanagan, a dual citizen of the United States and Ireland,[1] in contempt for refusal to testify under a grant of immunity before a federal grand jury regarding activities in the United States in furtherance of smuggling of guns and ammunition from the United States to Great Britain and Ireland in violation of federal firearms statutes, 26 U.S.C. § 5861 and 22 U.S.C. §§ 2778(b)(2) and (c). We reverse. 533 F.Supp. 957.

After being subpoenaed to appear before a federal grand jury in the Eastern District of New York, which was investigating an alleged conspiracy to run guns to the Irish Republican Army (IRA) in Ireland in violation of the above statutes, Flanagan advised that he would invoke his Fifth Amendment privilege against self-incrimination. Thereupon, on December 4, 1981, Judge McLaughlin signed an immunity order pursuant to 18 U.S.C. §§ 6002 and 6003 directing him to testify but granting him immunity against the use of his testimony in any subsequent criminal proceedings against him. *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). On December 9, 1981, Flanagan moved to quash the subpoena, contending among other things [2] that since the immuni-

---

1. Flanagan is a citizen of the Republic of Ireland by birth and later became a citizen of the United States. Under Irish law he retains Irish citizenship even though he renounced it to qualify for citizenship in the United States. Irish Nationality and Citizenship Act of 1956, Part 4, § 21.

2. Flanagan's contention that he should not be compelled to answer because the government's questions were derived from illegal wiretaps was rejected by Judge McLaughlin in a thorough and carefully considered opinion with which we agree. The government represented that, although electronic surveillance was conducted pursuant to the Foreign Intelligence

ty order would not protect him from prosecution in Ireland or the United Kingdom of Great Britain and Northern Ireland (UK) it would not give him protection coextensive with his privilege, to which he claimed entitlement under *Kastigar* and *Murphy v. Waterfront Commission,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). Following a hearing before the district court on the same date, Flanagan appeared before the grand jury on December 18, 1981, and declined to answer questions regarding gun-smuggling activities in the United States.[3] The government made a motion to compel Flanagan to testify or be held in contempt, which was heard by the district court on the same date.

In support of his motion to quash and in response to the government's motion Flanagan, who is named as an unindicted co-conspirator in a federal prosecution of five others for an alleged unlawful conspiracy to transport firearms to the Republic of Ireland for use by the IRA in Northern Ireland, *United States v. Falvey, et al.,* 81 Cr. 423 (S–2) (JMM) (E.D.N.Y.), pointed to the Northern Ireland (Emergency Provisions) Act of 1978, Ch. 53, 48 Halsbury's Statutes of England 972–1011 (3d ed. 1978), which makes it a crime to engage in certain types of political activity, including membership in or solicitation for a proscribed organization, and to The Offenses Against the State Act, 1939, No. 13. The government, on the other hand, represented that the transcripts of Flanagan's testimony would remain secret and not leave the U.S. Attorney's Office or be disclosed to any other body, that the federal prosecutor had not been in communication with law enforcement authori-

ties of Ireland or the U.K., and that the investigation did not involve activities over which those countries would have any jurisdiction. Therefore, it argued, Flanagan had not advanced any real or substantial danger, within the meaning of *Zicarelli v. New Jersey State Commission of Investigation,* 406 U.S. 472, 480–81, 92 S.Ct. 1670, 1676, 32 L.Ed.2d 234 (1972), of facing any prosecution abroad based on testimony he might give before the grand jury.

On February 10, 1982, Judge McLaughlin filed a reasoned opinion denying the government's motion to compel Flanagan to testify before the grand jury. He concluded that the Fifth Amendment protected Flanagan against the risk of foreign prosecution, relying on *Murphy v. Waterfront Commission,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). He further held that there is a real risk that Flanagan's answers to the questions put to him before the grand jury could provide a link in a chain of evidence tending to incriminate him under criminal statutes of Northern Ireland and the Republic of Ireland. These statutes include those prohibiting membership in proscribed organizations such as the IRA and permitting the use or possession of documents with respect to a proscribed organization and statements implying membership as evidence of unlawful membership.

The district court observed further that § 1806 of the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1806, authorizes the United States to make disclosure of foreign intelligence information gained by electronic surveillance. With respect to provisions

---

Surveillance Act, 50 U.S.C. §§ 1801, *et seq.,* it was not directed against Flanagan and it did not intercept any communications to which he was a party. He clearly lacks standing to assert an invasion of constitutional rights. *Alderman v. United States,* 394 U.S. 165, 174–76, 89 S.Ct. 961, 966–67, 22 L.Ed.2d 176 (1969); *United States v. Payner,* 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980). Moreover, the government's application for surveillance complied with 50 U.S.C. § 1804 and after an evidentiary hearing the district court found that the government had satisfied its burden under 18 U.S.C. § 3504.

3. Flanagan, an employee of Western Union in New York City, was asked whether he had been assigned to any particular vehicle in April 1981; whether he was acquainted with six men who had been indicted in the Eastern District of New York on gun-running charges in violation of federal law; whether he had engaged with them in transportation of firearms in the Eastern District of New York; and whether he would account for his whereabouts on April 30, 1981.

of Rule 6(e)(2), F.R.Cr.P.,[4] which requires grand jury testimony to be kept secret, the district court noted that the rule permits the government to make disclosure without court order to a government agency to the extent necessary to assist the prosecutor in the performance of his duty and took the view that the assumption that government officials will maintain secrecy is insufficient protection against foreign prosecution. Although Judge McLaughlin conceded that a grand jury witness could not be extradited to Northern Ireland for membership in a proscribed organization, he reasoned that this did not eliminate the risk of prosecution abroad because the witness might be extradited for "other crimes" revealed by the government's investigation into the gun-smuggling conspiracy. The district court further concluded that the grand jury's investigation would inhibit Flanagan's right to travel periodically to Ireland on political or personal business. Lastly, Judge McLaughlin held the federal grant of immunity insufficient to protect Flanagan abroad for the reason that foreign prosecutors would not be required to assure him that their charges would be based upon

evidence independent of his compelled testimony. From the court's denial of its motion to compel Flanagan's testimony under 28 U.S.C. § 1826(a) the government appeals.

## DISCUSSION

■■■ The Fifth Amendment protects a witness against giving testimony that would "furnish a link in the chain of evidence needed to prosecute" him for a crime, provided "the witness has reasonable cause to apprehend danger from a direct answer." *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). But "his say-so does not of itself establish the hazard of incrimination." *Id.* at 486, 71 S.Ct. at 818. When his asserted fear is challenged, the court must look to the surrounding circumstances and context to determine whether the asserted fear is real or imaginary. Often the risk of incrimination is made readily apparent by posing a few hypothetical questions. On the other hand, when the witness is granted use immunity pursuant to 18 U.S.C. §§ 6002, 6003, see *Kastigar v. United States,* 406 U.S. 441, 92

---

**4.** *"RULE 6. The Grand Jury*

.  .  .  .  .

*"(e) Recording and Disclosure of Proceedings.*

.  .  .  .  .

*"(2) General Rule of Secrecy.*—A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court.

"(3) *Exceptions.*

"(A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to—

(i) an attorney for the government for use in the performance of such attorney's duty; and

(ii) such government personnel as are deemed necessary by an attorney for the government to assist an attorney for the

government in the performance of such attorney's duty to enforce federal criminal law.

"(B) Any person to whom matters are disclosed under subparagraph (A)(ii) of this paragraph shall not utilize that grand jury material for any purpose other than assisting the attorney for the government in the performance of such attorney's duty to enforce federal criminal law. An attorney for the government shall promptly provide the district court, before which was impaneled the grand jury whose material has been so disclosed, with the names of the persons to whom such disclosure has been made.

"(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

(i) when so directed by a court preliminary to or in connection with a judicial proceeding; or

(ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.

"If the court orders disclosure of matters occurring before the grand jury, the disclosure shall be made in such manner, at such time, and under such conditions as the court may direct."

S.Ct. 1653, 32 L.Ed.2d 212 (1972), his claim of privilege will usually be rejected because the immunity is normally "coextensive with the privilege," and the witness is protected against direct or derivative use of his testimony in any later domestic prosecution against him, federal or state. *Id.* at 459, 462, 92 S.Ct. at 1664, 1665; *Murphy v. Waterfront Commission,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). Indeed, in the event of such a prosecution the prosecutor is saddled with the heavy burden of proving that his evidence was not derived directly or indirectly from the witness' testimony. *Goldberg v. United States,* 472 F.2d 513, 516 (2d Cir. 1973); 18 U.S.C. § 6002. See also *Murphy v. Waterfront Commission, supra,* 378 U.S. at 79, 84 S.Ct. at 1609.

▮ The witness' assertion that he fears *foreign* prosecution, however, raises new issues. Although a grant of immunity protects him from any domestic prosecution based on his testimony, no domestic government has the legal power to bar prosecution of him by a foreign country or to prevent the use against him in such a prosecution of testimony immunized from use against him in domestic criminal proceedings. This raises the question of whether the Fifth Amendment entitles him to protection against any prosecution abroad that might be based on or derived from his immunized testimony, a question that has not yet been answered by the Supreme Court or ourselves. See *Zicarelli v. New Jersey State Commission of Investigation,* 406 U.S. 472, 480–81, 92 S.Ct. 1670, 1676, 32 L.Ed.2d 234 (1972). Even if he were so entitled, presumably on the ground that the immunity must be "coextensive with the scope of the privilege," he would still be required to show that despite the grant of immunity there is a real and substantial risk, as distinguished from a mere possibility, that answers to questions might provide a link which would lead to incrimination of him and be used in a foreign prosecution of him. *California v. Byers,* 402 U.S. 424, 431, 91 S.Ct. 1535, 1539, 29 L.Ed.2d 9 (1971); *id.* at 437–38, 91 S.Ct. at 1542 (Harlan, J., concurring); *Marchetti v. United States,* 390 U.S.

39, 48, 88 S.Ct. 697, 702, 19 L.Ed.2d 889 (1968). Because the witness is fully protected throughout the United States from prosecution, the court in resolving the issue must then focus upon such questions as whether there is an existing or potential foreign prosecution of him; what foreign charges could be filed against him; whether prosecution of them would be initiated or furthered by his testimony; whether any such charges would entitle the foreign jurisdiction to have him extradited from the United States; and whether there is a likelihood that his testimony given here would be disclosed to the foreign government. "[T]he [Fifth Amendment] privilege protects against real dangers, not remote and speculative possibilities." *Zicarelli v. New Jersey State Commission of Investigation,* 406 U.S. at 478, 92 S.Ct. at 1675; *United States v. Yanagita,* 552 F.2d 940, 946–47 (2d Cir. 1977).

In view of the extensive scope of the immunity granted the witness under 18 U.S.C. § 6002, which narrows the risk of incrimination, the burden upon him of showing circumstances posing a risk of incrimination is greater than if he had not been granted immunity. The apprehension must be a real and reasonable one, based on objective facts as distinguished from his subjective speculation. In the absence of a particularized showing that the testimony may incriminate the witness in the foreign prosecution the witness granted immunity could use the privilege as a virtual license to frustrate almost any criminal investigation having international consequences, however peripheral or tangential. This would run counter to the policy in favor of "the public . . . [having] a right to every man's evidence." *United States v. Nixon,* 418 U.S. 683, 709–10, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974) (quoting *Branzburg v. Hayes,* 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972)).

▮ Applying these principles, we are satisfied that Flanagan's fear of foreign prosecution, viewed objectively, is remote and speculative rather than real, reasona-

ble, or substantial. In the first place, there is no pending or prospective prosecution of him, much less any effort to extradite him to Northern Ireland or to the Republic of Ireland. The unanswered questions asked of him in the grand jury all relate to conduct in the United States, not to activities in Ireland or the U.K., which might present a closer question. Thus this case differs significantly from *In re Cardassi,* 351 F.Supp. 1080 (D.Conn.1972) (Newman, J.), where the witness, although granted use immunity, was asked questions seeking to probe into her marijuana dealings *in Mexico* and her smuggling of marijuana to the United States *from Mexico,* a country which had penal laws prohibiting and punishing trafficking in and export of marijuana, which provided some basis for a reasonable fear that her testimony might lead to her being prosecuted in Mexico. *Id.* at 1084. See also *United States v. Brummitt,* 665 F.2d 521, 524 (5th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 2244, 72 L.Ed.2d 852 (1982) (counsel "pointed out that Mexican criminal law, which permits in absentia prosecutions, imposes harsh criminal penalties and that Mexican courts would not be bound by a grant of immunity in the United States"). Moreover, criminal laws usually do not apply extraterritorially, *United States v. Doe,* 361 F.Supp. 226, 227 (E.D.Pa.1973), *aff'd without opinion sub nom. Appeal of Cahalane,* 485 F.2d 678 (3d Cir. 1973), *cert. denied,* 415 U.S. 989, 94 S.Ct. 1587, 39 L.Ed.2d 886 (1974); *In re Quinn,* 525 F.2d 222, 223 (1st Cir. 1975), and there is no evidence that Ireland or the U.K. has claimed such jurisdiction. Flanagan's disclosure of criminal activities in the United States would not, therefore, expose him to prosecution in the Republic of Ireland or in the U.K.

Nor has Flanagan identified any foreign law authorizing prosecution for acts committed in the United States or providing grounds for his extradition to Ireland or the

U.K. on account of such conduct in the United States. The Extradition Treaty Between the Government of the United States and the Government of the United Kingdom of Great Britain and Northern Ireland, entered into force January 21, 1977, 28 U.S.T. 227, T.I.A.S. 8468, permits extradition for a schedule of specific offenses which do not include membership in a proscribed organization such as the IRA or violation of gun control statutes. It also provides for extradition for offenses that are punishable by both governments by imprisonment for more than one year. Lastly it prohibits extradition for any offense viewed by the requested country as "political" in nature.

There is no record support for the district court's speculation that, although Flanagan could not be extradited for membership in a proscribed organization, he might face extradition "for other crimes that may come to light as a result of its investigation into the alleged smuggling conspiracy." Nor is there any evidence that he would testify to involvement in other extraditable crimes. Moreover, at oral argument the government advised us, citing Article V, ¶ 2, of the current Extradition Treaty with the United Kingdom,[5] that it would refuse to assist in the extradition of an individual who claims that he faces a legitimate threat that testimony taken from him pursuant to a grant of immunity in the grand jury provides the basis for foreign prosecution.

▆ Another factor to be considered in determining the reality or remoteness of the risks of incrimination under foreign law and of foreign prosecution is the extent to which the testimony will be precluded from disclosure to foreign governments. The United States Attorney here contends that Flanagan is fully protected by the provisions of Rule 6(e), F.R.Cr.P.,[6] requiring that grand jury testimony be kept secret, and points to decisions of other circuits holding

---

5. Article V, ¶ 2, provides: "Extradition may be refused on any other ground which is specified by the law of the requested Party." 28 U.S.T. at 230. There is no extradition treaty with the Republic of Ireland.

6. See footnote 4, *supra.*

that this guarantee eliminates any reasonable ground for apprehending foreign prosecution. See *In re Baird,* 668 F.2d 432, 434 (8th Cir. 1982), *cert. denied,* —— U.S. ——, 102 S.Ct. 2255, 72 L.Ed.2d 860 (1982); *United States v. Brummitt,* 665 F.2d 521, 524–26 (5th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 2244, 72 L.Ed.2d 852 (1982); *In re Campbell,* 628 F.2d 1260, 1262 (9th Cir. 1980); *In re Tierney,* 465 F.2d 806, 811 (5th Cir. 1972), *cert. denied,* 410 U.S. 914, 93 S.Ct. 959, 35 L.Ed.2d 276 (1973); *In re Parker,* 411 F.2d 1067, 1069–70 (10th Cir. 1969), *vacated as moot sub nom. Parker v. United States,* 397 U.S. 96, 90 s.Ct. 819, 25 L.Ed.2d 81 (1970). In addition, the United States Attorney assures us that it "would not disclose Flanagan's immunized testimony to anyone ... much less to foreign authorities ... without authorization and ... that [it] would be bound by any additional safeguards the judge might wish to impose." Brief for the Appellant at 27.

For reasons stated by the district court, see also *In re Cardassi, supra,* 351 F.Supp. at 1082, we do not believe that Rule 6(e) guarantees as a practical matter that grand jury testimony will not be disclosed to a foreign power. Rule 6(e)(3)(A) authorizes disclosure to the prosecutor for use in the performance of his duty and to such government personnel as he deems necessary to assist in the performance of his duty to enforce federal law, in which event the persons to whom the material is disclosed are prohibited from using it for any other purpose and their names must be furnished to the court by the prosecutor. Otherwise the material may be disclosed only by permission of the court. Rule 6(e)(3)(C). Although the penalties for violation could be severe, see *In re Grand Jury Investigation (Lance),* 610 F.2d 202, 220 (5th Cir. 1980) (contempt sanctions); *United States v. Lawson,* 502 F.Supp. 158, 167 (D.Md.1980) (dismissal of indictment with prejudice could result for flagrant abuse of grand jury secrecy rule), and we have no doubt whatsoever that the United States Attorney would do his utmost to protect the testimony from unauthorized disclosure, experience shows that grand jury proceedings are not "leakproof." See, e.g., *In re Biaggi,* 478 F.2d 489, 492 (2d Cir. 1973); *In re Grand Jury Investigation (Lance),* 610 F.2d 202, 220 (5th Cir. 1980); *United States v. Bazzano,* 570 F.2d 1120, 1123–28 (3d Cir. 1977), *cert. denied,* 436 U.S. 917, 98 S.Ct. 2261, 56 L.Ed.2d 757 (1978); *In re Archuleta,* 432 F.Supp. 583, 599 (S.D.N.Y.1977); *United States v. Marcello,* 508 F.Supp. 586, 597 (E.D.La.1981); *United States v. Lawson,* 502 F.Supp. 158, 167 (D.Md.1980); General Accounting Office, Comptroller General of the United States, *Report to the Congress: More Guidance and Supervision Needed Over Federal Grand Jury Proceedings* 6 (October 16, 1980) (identifying 492 "disclosures of information [that] compromised one or more of the purposes of grand jury secrecy").

Although sworn to secrecy, grand jurors might consciously or inadvertently leak confidential information to reporters who would refuse to disclose their sources. Government agents to whom the prosecutor has entrusted grand jury minutes pursuant to Rule 6(e)(3)(A)(ii) for the purpose of assisting him in the performance of his duties have on occasion disclosed them without authorization to third persons. See *United States v. Lawson, supra,* 502 F.Supp. at 167 (DEA agent); *United States v. Bazzano, supra,* 570 F.2d at 1123–28 (FBI agent). Disclosure of grand jury minutes containing exculpatory material to a defendant is mandated by *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), as is disclosure of a trial witness' grand jury testimony regarding matters testified to on direct examination at trial, 18 U.S.C. § 3500(e)(3), F.R.Cr.P. 26.2. Disclosures of grand jury minutes have been permitted by the court when relevant to a motion to dismiss an indictment, *United States v. Garcia,* 420 F.2d 309 (2d Cir. 1970), to a double jeopardy claim or challenge of search warrants, *United States v. Hughes,* 413 F.2d 1244 (5th Cir. 1969), or to a post-conviction proceeding, *United States v. Moten,* 582 F.2d 654, 662 (2d Cir. 1978), *on remand,* 463 F.Supp. 49 (S.D.N.Y.1979), *aff'd,* 620 F.2d 13 (2d Cir. 1980). Indeed, disclosure of

grand jury records has even been authorized for use in private litigation, *Douglas Oil Co. of California v. Petrol Stops Northwest,* 441 U.S. 211, 220, 99 S.Ct. 1667, 1673, 60 L.Ed.2d 156 (1979); *United States v. Proctor & Gamble,* 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958).

▮ For these reasons we prefer not to follow the view of some other circuits that Rule 6(e), F.R.Cr.P., eliminates any real or substantial risk that a witness' immunized grand jury testimony will be used as a link in evidence used to prosecute him abroad. Absent a law to the effect that a witness who gives testimony pursuant to a grant of immunity may not be extradited we are relegated to determining in each case whether the risk is sufficiently substantial to justify a real fear that the evidence might incriminate the witness in a foreign prosecution. Here the circumstances establish beyond any reasonable doubt that such a fear would not be real or reasonable. The absence of any present or prospective foreign prosecution of Flanagan, the limitation of the grand jury's questioning of him to activities in the United States, the failure to proffer any evidence that extraditable crimes might be revealed by the grand jury's investigation, the non-extraditability of Flanagan for the crimes that have been suggested (e.g., membership in the IRA), the government's assurance that it would not reveal his testimony, directly or indirectly, to the U. K. or Republic of Ireland and that it would, on the contrary, oppose any effort to extradite him to face foreign charges that might be derived from his testimony, and the unlikelihood (notwithstanding instances of "leaks" in violation of Rule 6(e) discussed above) that any of his testimony would be directly or indirectly communicated to Irish or U. K. authorities, all demonstrate that the risk of disclosure is too remote and speculative to support his

Fifth Amendment claim. In addition, the district court has the discretionary power to minimize any risk of disclosure by ordering that additional protective measures be taken, such as sealing the transcript on the condition that it will not be disclosed to third persons without the court's permission.

▮ For the same reasons we reject Flanagan's contention that his right to travel abroad to Ireland will be inhibited in violation of his constitutional rights, *compare United States v. Guest,* 383 U.S. 745, 757–58, 86 S.Ct. 1170, 1177–78, 16 L.Ed.2d 239 (1966) (recognizing constitutional right to interstate travel), *with Califano v. Aznavorian,* 439 U.S. 170, 176–77, 99 S.Ct. 471, 474–75, 58 L.Ed.2d 435 (1978) (according right of international travel less deference than right of interstate travel). Under all the circumstances it does not appear that his right of travel will be adversely affected by his giving secret immunized grand jury testimony with respect to activities in the United States.[7]

Since Flanagan has failed to demonstrate any real or substantial risk of foreign prosecution as a result of his giving grand jury testimony under a grant of immunity it becomes unnecessary for us to decide the question whether, when immunity is granted a grand jury witness, the Fifth Amendment protects him against disclosure of information that would expose him to a substantial risk of foreign prosecution.

The order of the district court is reversed and the case remanded for further proceedings consistent with this opinion. The mandate shall issue forthwith.

VAN GRAAFEILAND, Circuit Judge, concurring:

I am not prepared to hold that, despite the provisions of Rule 6(e), there is a "real

---

7. If Flanagan chose voluntarily to visit Northern Ireland he would, if interrogated before a grand jury or in a court of law in that country, be permitted to invoke his privilege against self-incrimination under local law. See 11 Halsbury's Laws 278–79 (4th ed. 1978). Of course, should the government of Northern Ireland have sufficient independent evidence to charge Flanagan with offenses against the laws of that country, it could, if he chose to visit it, arrest him and bring him to trial regardless whether he had given immunized testimony in the United States.

and substantial risk" that the testimony of an immunized grand jury witness will be available for use in a foreign prosecution. *See In re Baird,* 668 F.2d 432, 434 (8th Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 2255, 72 L.Ed.2d 860 (1982); *United States v. Brummitt,* 665 F.2d 521, 524–26 (5th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 2244, 72 L.Ed.2d 852 (1982). If we carry out our professed intent to see that the Rule is enforced, *In re Biaggi,* 478 F.2d 489, 490 n.1 (2d Cir. 1973); *Matter of Archuleta,* 432 F.Supp. 583, 599 (S.D.N.Y.1977), the likelihood is that the tradition of grand jury secrecy, which is "older than the Nation itself", *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 399, 79 S.Ct. 1237, 1240, 3 L.Ed.2d 1323 (1959), will not be cavalierly disregarded.

With the foregoing reservation, I concur in Judge Mansfield's well-reasoned opinion.