**In re GRAND JURY PROCEEDINGS.**

**UNITED STATES of America, Appellee,**

v.

**Nicole CHEVRIER, Appellant.**

**No. 179, Docket 84–1222.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 10, 1984.

Decided Nov. 14, 1984.

J. Jeffrey Weisenfeld, New York City (Joseph S. Wool, Wool & Murdoch, Burlington, Vt., Goldberger & Dubin, New York City, of counsel), for appellant.

George J. Terwilliger, III, Asst. U.S. Atty., Burlington, Vt. (George W.F. Cook, U.S. Atty., D. Vermont, Peter W. Hall, Asst. U.S. Atty., Rutland, Vt., of counsel), for appellee.

Before FEINBERG, Chief Judge, and MANSFIELD and KEARSE, Circuit Judges.

MANSFIELD, Circuit Judge:

Once again we are faced with the question of whether a federal grand jury witness' fear of foreign prosecution is real and substantial enough to justify her invocation of a Fifth Amendment privilege and, if so, whether the privilege may be invoked to protect against the risk of incrimination under foreign law. *See Zicarelli v. New Jersey State Comm'n of Investigation,* 406 U.S. 472, 478, 92 S.Ct. 1670, 1675, 32 L.Ed.2d 234 (1972); *United States v. Flanagan,* 691 F.2d 116, 121 (2d Cir.1982); *In re Gilboe,* 699 F.2d 71, 74–75 (2d Cir.1983). Nicole Chevrier, a citizen of Canada, appeals from orders of the District of Vermont entered by Chief Judge Albert W. Coffrin pursuant to 28 U.S.C. § 1826 directing that she be confined for refusal to testify, after being granted immunity from prosecution in the United States, regarding the circumstances surrounding her transportation from Canada into the United States of $139,000 in U.S. currency. She refused to testify on the ground that her testimony might incriminate her under the laws of Canada. Judge Coffrin's orders, both dated June 5, 1984, granted the government's motion for confinement but stayed enforcement pending appeal and released Chevrier on bail, whereupon she returned to Canada. The orders also contained provisions designed to prevent the disclosure of Chevrier's grand jury testimony to Canadian law enforcement authorities. We modify the orders to add further protective provisions and affirm the orders as so modified.

On January 22, 1984, Chevrier was arrested at the Burlington International Airport after she was found to have transported from Canada into the United States on the previous day $139,000 in U.S. currency in concealed compartments of her luggage and was charged with failing to report the importation of more than $5,000 in monetary instruments, 31 U.S.C. §§ 5316(a), (b) and 5322(a).[1] At the time of arrest Chevri-

---

**1.** Title 31 U.S.C. §§ 5316(a), (b) and 5322(a) (1982) provide:

§ 5316. *Reports on exporting and importing monetary instruments*

"(a) Except as provided in subsection (c) of this section, a person or an agent or bailee of the person shall file a report under subsection (b) of this section when the person, agent, or bailee knowingly—

(1) transports or has transported monetary instruments of more than $5,000 at one time—

(A) from a place in the United States to or through a place outside the United States; or

(B) to a place in the United States from or through a place outside the United States; or

(2) receives monetary instruments of more than $5,000 at one time transported into the

er, after receiving *Miranda* warnings in English and French, stated that she had been given the money in Canada by someone she knew and had been paid $3,000 to deliver it to someone in New Jersey whom she did not know. Shortly after Chevrier's arrest the Quebec Provincial Police made an inquiry of federal law enforcement officials in Burlington regarding the circumstances surrounding Chevrier's arrest. However, no criminal proceeding against her has been instituted in Canada and there is no evidence that one is contemplated.

Upon being called before a federal grand jury on February 2, 1984, Chevrier stated that she was invoking her Fifth Amendment privilege against self-incrimination. The government thereupon obtained an order pursuant to 18 U.S.C. §§ 6002, 6003 (1982) granting her use immunity, and she was directed by the court to answer questions before the grand jury. When she refused to do so, asserting fear of Canadian prosecution as the basis for her refusal, the government on February 3, 1984, moved for an order of confinement pursuant to 28 U.S.C. § 1826.

While the government's motion was pending, Chevrier was released upon $20,-000 bail, which was set in the criminal case against her and agreed to by Judge Coffrin. She then returned to her home in Quebec. Thereafter the government consented to dismissal without prejudice of the criminal charges because it was unsure of her knowledge of the reporting requirements of 31 U.S.C. §§ 5316 and 5322.

Judge Coffrin held two hearings on the government's motion for confinement.

During the hearings, the Assistant U.S. Attorney for the District of Vermont advised the judge that he wanted to question Chevrier before the grand jury regarding the circumstances surrounding her transportation of the currency into the United States, including the identities of the owner of the money and of the person from whom she received it, the purpose for which she was transporting it, her destination, the person to whom she planned to deliver it, and what she was to receive, if anything, for transporting it. Her counsel argued that her answers, if revealed, could possibly lead to her being prosecuted in Canada for participation in a conspiracy to export, import or deal in narcotics or some other contraband in violation of Canadian law.

On June 5, 1984, Judge Coffrin filed his decision granting the government's motion for confinement, subject to the provisions of a protective order entered on the same date. After reviewing the circumstances in the light of *Zicarelli, Flanagan* and *Gilboe, supra,* he concluded that the possibility of Canadian prosecution of the witness was too speculative to entitle her to "invoke the Fifth Amendment for ... fear of foreign prosecution," especially in view of the supplemental protective order entered by him on the same date. The latter order prohibited disclosure of her grand jury testimony, directly or indirectly, to any foreign law enforcement official or authority without an express order of the court permitting such disclosure. It also provided that any disclosure made pursuant to F.R.

United States from or through a place outside the United States.

"(b) A report under this section shall be filed at the time and place the Secretary of the Treasury prescribes. The report shall contain the following information to the extent the Secretary prescribes:

(1) the legal capacity in which the person filing the report is acting.

(2) the origin, destination, and route of the monetary instruments.

(3) when the monetary instruments are not legally and beneficially owned by the person transporting the instruments, or if the person transporting the instruments personally is not

going to use them, the identity of the person that gave the instruments to the person transporting them, the identity of the person who is to receive them, or both.

(4) the amount and kind of monetary instruments transported.

(5) additional information.

\*　\*　\*　\*　\*　\*

"§ 5322. *Criminal penalties*

"(a) A person willfully violating this subchapter or a regulation prescribed under this subchapter (except section 5315 of this title or a regulation prescribed under section 5315) shall be fined not more than $1,000, imprisoned for not more than one year, or both."

Crim.P. 6(e)(3) by the Assistant U.S. Attorney conducting the grand jury proceeding at which Chevrier appeared must be accompanied by delivery of a copy of the court's order with such further instructions as the Assistant U.S. Attorney might consider necessary, and that the prosecutor should notify the court of any such Rule 6(e)(3) disclosure, furnishing the name of the person to whom it was made, confirming that a copy of the order had been delivered to the recipient, and summarizing any supplemental instructions.

The district court stayed the confinement order pending appeal pursuant to 28 U.S.C. § 1826(b), and directed that Chevrier be released on $20,000 bail, the amount that had been provided on the dismissed criminal charge against her.[2]

### DISCUSSION

Neither the Supreme Court nor this court has ruled on the question of whether the Fifth Amendment protects a witness against the risk of foreign prosecution. *See Zicarelli v. New Jersey State Comm'n of Investigation, supra,* 406 U.S. at 478, 92 S.Ct. at 1675. Before that issue may be reached there must be "a real and substantial fear of foreign prosecution" since "[i]t is well established that the privilege protects against real dangers, not remote and speculative possibilities." *Id.,* 406 U.S. at 478, 92 S.Ct. at 1675; *accord Flanagan, supra,* 691 F.2d at 121. Moreover, as we stated in *Flanagan,* the fear must be "based on objective facts as distinguished from ... subjective speculation." 691 F.2d at 121; *accord In re Gilboe, supra,* 699 F.2d at 75.

In *Flanagan,* we noted that in determining whether there is a real and substantial

danger of foreign prosecution the court should

"focus upon such questions as whether there is an existing or potential foreign prosecution of him; what foreign charges could be filed against him; whether prosecution of them would be initiated or furthered by his testimony; whether any such charges would entitle the foreign jurisdiction to have him extradited from the United States; and whether there is a likelihood that his testimony given here would be disclosed to the foreign government." 691 F.2d at 121.

There is no existing foreign prosecution of Chevrier; the Canadian government's interest appears to have been limited to a routine inquiry shortly after her arrest in the United States. As far as the record reveals, she has not been the subject of interrogation, investigation, or arrest in Canada since her return there on bail. Nor is there any indication that apart from any grand jury testimony she might give, the Canadian government has evidence to prefer criminal charges against her or intends to do so; if such evidence existed, one might reasonably conclude that by this time, some nine months after her arrest in the United States, Canadian charges against her would have been filed. Assuming, however, that Chevrier's grand jury testimony would reveal a violation of Canadian law sufficiently serious to lead the Canadian government to prosecute her, all of which is somewhat speculative, the substantiality of the danger of any such prosecution depends heavily on whether her testimony would be made available to Canadian law enforcement authorities, either directly or through "leakage." In evaluating this risk we have declined to accept the view of some circuits that Rule 6(e), F.R.

---

**2.** Since the district court stayed its orders pending appeal and released Chevrier on bail, the 30-day provision of 28 U.S.C. § 1826(b), does not technically apply. *In re Rosahn,* 671 F.2d 690, 693–94 (2d Cir.1982); *In re Weiss,* 703 F.2d 653, 660 n. 6 (2d Cir.1983); *Matter of Kitchen,* 706 F.2d 1266, 1271 n. 2 (2d Cir.1983). However, we believe that the statute was intended not only to protect the witness who may be entitled to be released from confinement, but also to aid grand juries in the investigation of crimes. Therefore, we note that even though the statute does not strictly apply, an appeal of this sort should nonetheless be expedited, even though the 30-day provision need not be complied with. *Cf. In re Rosahn, supra,* 671 F.2d at 694 n. 1.

Crim.P., which requires grand jury testimony to be kept secret, automatically eliminates any reasonable ground for apprehending foreign prosecution or guarantees that grand jury testimony will not be disclosed to a foreign power. *Flanagan, supra,* 691 F.2d at 122–24. Instead, "we are relegated to determining in each case whether the risk is sufficiently substantial to justify a real fear that the evidence might incriminate the witness in a foreign prosecution." *Id.,* 691 F.2d at 124.

In the present case Chief Judge Coffrin has already taken steps designed to minimize the risk of disclosure of Chevrier's grand jury testimony. He has ordered that in addition to the safeguards prescribed by Rule 6(e), her testimony may not be furnished directly or indirectly to any foreign law enforcement authorities without an express order of the court, that any disclosure to U.S. federal authorities by the prosecutor pursuant to Rule 6(e)(3) be accompanied by delivery of a copy of the court's supplemental June 5, 1984, protective order, and that the court be notified of such disclosure and delivery, together with the name of the person to whom the disclosure and delivery was made and a summary of any other oral instructions given to that person.

Although Rule 6(e) and the foregoing safeguards go far toward protecting Chevrier against disclosure of her grand jury testimony, we believe that in the circumstances of this case the following additional protective provisions should be expressly incorporated in a court order to guard against the substance of her testimony becoming known, directly or indirectly, by any foreign authorities: (1) Each grand juror present during Chevrier's testimony and each person to whom disclosure of any part thereof is made (including an interpreter, stenographer, operator of a recording device or person other than the attorney for the government) shall be furnished with and acknowledge in writing the receipt of copies of Rule 6(e)(2), F.R.Crim.P., and the order of the district court entered in accordance with this opinion (which should also incorporate the requirements of

the June 5, 1984 protective order to the extent not inconsistent with this opinion); (2) any recording, stenographic notes and transcript of Chevrier's grand jury testimony shall be placed under seal with the court and no part thereof will be released by the court except upon written petition and an order of the court identifying the person to whom the testimony is to be released, specifying the purpose of the release, directing that the contents may not be communicated to any third person without following the procedure herein prescribed, and imposing such conditions as are reasonably deemed necessary to ensure that no part of the information will be communicated directly or indirectly to any Canadian governmental authority; (3) any person to whom any part of Chevrier's grand jury testimony is furnished pursuant to the court's order shall sign a sworn statement to the effect that no copy thereof will be made, that the testimony will not be communicated directly or indirectly to any other person (including any Canadian governmental authority) and that upon completion of the use of the testimony it will be returned to the court and placed under seal; (4) a record will be kept by the court showing the name and address of every person to whom any part of Chevrier's grand jury testimony was released, the date of release, and the date of return to the court; (5) any application to the court for release of any of Chevrier's grand jury testimony and any hearing thereon shall be made *in camera* and shall, with any record thereof and any order entered thereon, be placed under seal with the court; and (6) any knowing violation of the court's order may be punished as a contempt of court.

In light of the circumstances, including the absence of any present or prospective Canadian prosecution of the witness and her failure to indicate what violation of Canadian law might be the subject of prosecution based on her grand jury testimony, we are satisfied that the foregoing additional protective measures eliminate any real or substantial danger that Chevrier's grand jury testimony could be used to pros-

ecute her in Canada. Our ruling, of course, is limited to the record as it presently exists. Other circumstances, such as an effort to require Chevrier to testify publicly in some other proceeding, might lead to a different result. *See, e.g., Flanagan, supra,* 691 F.2d at 124 (court is relegated to determining from circumstances in each case whether risk is real and substantial). However, our ruling makes it unnecessary for us upon this appeal to determine whether the Fifth Amendment may be invoked by a witness to protect her against the risk of foreign prosecution. *Compare In re Cardassi,* 351 F.Supp. 1080 (D.Conn. 1972); *with In re Parker,* 411 F.2d 1067, 1070 (10th Cir.1969), *vacated as moot,* 397 U.S. 96, 90 S.Ct. 819, 25 L.Ed.2d 81 (1970), *and Phoenix Assurance Company v. Runck,* 317 N.W.2d 402 (N.D.1982), *cert. denied,* 459 U.S. 862, 103 S.Ct. 137, 74 L.Ed.2d 117 (1982).

Accordingly, the orders of the district court, as modified herein, are affirmed. The mandate shall issue forthwith.