**In re Ilene Ruth MOSES, Debtor.**

**No. 89–05640–G.**

United States Bankruptcy Court,
E.D. Michigan, S.D.

Dec. 4, 1990.

As Amplified Oct. 17, 1991.

Hill Lewis by Peter A. Jackson and Timothy D. Wittlinger, Detroit, Mich., for debtor.

Mayer, Brown & Platt by Barbara Bertok, Chicago, Ill., for creditor Semifora AG.

Thomas Morris, Shefferly & Silverman, P.C., Southfield, Mich., for Trustee.

David Vigna, Detroit, Mich., for Michigan Nat. Bank.

## MEMORANDUM OPINION, FINDINGS OF FACTS AND CONCLUSIONS OF LAW

RAY REYNOLDS GRAVES, Chief Judge.

This Court is presented with Trustee's Motion to Compel, Debtor, Ilene Moses, to testify at a Creditors 341 Meeting in compliance with 11 U.S.C. § 341. The Debtor has refused to testify and asserts the Fifth Amendment Constitutional right against self-incrimination for fear of foreign prosecution as the basis for her refusal.

The Motion was brought on before the Court on Thursday, November 1, 1990, at which time the Court heard the arguments of counsel for the Debtor, Ilene Ruth Moses, and counsel for the Trustee, David W. Allard, Jr. The Court also heard the arguments and views of Michigan National Bank and Semifora, AG, the two principal creditors in the bankruptcy proceeding, through their counsel.

After hearing the respective arguments, reviewing the pleadings and upon independent research, this Court finds that the Debtor has not demonstrated a real and substantial fear of foreign prosecution. Therefore, the Debtor may not assert any Fifth Amendment privilege and will be compelled to testify.

## FACTS

This case was commenced with the filing of an Involuntary Chapter 7 Petition on August 1, 1989. The case was converted by the Debtor to Chapter 11 on or about September 19, 1989. On October 25, 1989, a First Meeting of Creditors was conducted pursuant to 11 U.S.C. § 341. The Debtor appeared at the First Meeting of Creditors, conducted on October 25, 1989, but refused to answer any question relating to foreign transactions. The Debtor asserted that her refusal to respond to questions involving foreign transactions was premised upon the fact that she had a fear of foreign prosecution as a result of an ongoing criminal investigation by the Swiss Government.[1]

On September 5, 1990, the case was converted to Chapter 7. A First Meeting of Creditors for the Chapter 7 case was scheduled for October 18, 1990. As a result of the Debtor refusing to testify regarding certain issues at the Creditor's 341 Meeting for the Chapter 11 case, the Trustee sought to determine in advance of the 341 Meeting, scheduled for October 18, 1990, the scope of the Debtor's Fifth Amendment privilege, if any.

A hearing was heard on the matter of the Debtor's proposed assertion of the Fifth Amendment privilege regarding certain foreign and domestic transactions in an effort to determine the Debtor's right not to testify. The Trustee requested a hearing date prior to the scheduled 341 Meeting, but a hearing was not held prior to the creditor's meeting. The section 341 examination of the Debtor commenced on October 18, 1990 and continued for approximately five hours. At the hearing, the Debtor asserted a right not to testify as to any foreign transactions, assets, or related matters.

Debtor, Ilene Ruth Moses, refused to respond to certain questions in a Creditor's Meeting under 11 U.S.C. § 341, asserting the Fifth Amendment of the Constitution of the United States, due to a fear of foreign prosecution. Debtor Moses is an international fashion designer and does a substantial amount of work in Europe, and claims that if she testified that her constitutional right to travel would be hampered. The Debtor asserts that the government of Switzerland has issued a warrant for her arrest for fraud and other crimes.[2] It is as a result of the pending warrant that the Debtor asserts her Fifth Amendment right not to testify. The Debtor contends that charges have been brought against her in the Canton of Zurich, Switzerland.[3] The only evidence that Debtor offers as proof of the pending investigation is a letter from previous counsel and a copy of a letter dated October 27, 1989 from the Swiss Consulate in Chicago Illinois, describing the

---

1. Debtor, Ilene Ruth Moses, asserts that she has been the subject of criminal investigation since 1987. The investigation concerns, at a minimum, allegations that the Debtor fraudulently misrepresented amounts due for a loan from Swiss Canto Bank from certain foreign entities. (Swiss Canto Bank subsequently assigned to Semifora AG its related guaranty claim against the Debtor).

2. The Trustee has stipulated that an arrest warrant has been issued for the Debtor in Switzerland.

3. The Swiss criminal procedure is divided into three stages: (1) investigation by the police (2) inquisition and accusation by the prosecutor, and (3) trial.

alleged criminal proceedings.[4] This Court heard the trustee's Motion to Compel testimony and to determine the scope of Debtor's Fifth Amendment privilege, but did not rule on the scope of the privilege prior to the 341 Meeting held on October 18, 1990. Rather, the Court found that it was not possible to determine the legal nature of the scope of privilege, if one existed prior to the Debtor testifying; therefore, the Debtor must testify and if it appears that certain questions approach the Debtor's privilege not to testify, then the Debtor and her counsel must recite that fact on the record.

Due to the Debtor's refusal to answer certain questions in the 341 Meeting, the Trustee brought this Motion to Compel Debtor to Testify.

## LAW

### Fifth Amendment Privilege

■ The right to assert the Fifth Amendment, for fear of criminal prosecution in a foreign arena, exists if the Debtor demonstrates a sound basis for a reasonable fear of foreign prosecution.[5] The Fifth Amendment protects a witness against giving testimony that would "furnish a link in the chain of evidence needed to prosecute her for a crime."[6] This is, of course, premised upon the contention that the witness has reasonable cause to apprehend danger from a direct answer. The assertions of the witness that she has a fear of foreign prosecution creates a situation where, given the appropriate circumstances, one could invoke the Fifth Amendment. While the United States does not have the legal power to protect its citizens from foreign prosecution, the issue of whether the Fifth Amendment provides

protection of a witness for fear of foreign prosecution has yet to be answered.[7]

The most authoritative statement on the question is *United States v. (Under Seal)*, 794 F.2d 920 (4th Cir.1986), *cert. den.*, 479 U.S. 924, 107 S.Ct. 331, 93 L.Ed.2d 303 (1986), where the Fourth Circuit Court of Appeals held that the Fifth Amendment does not grant any right to a person in the United States not to testify based on a fear of foreign prosecution.

The Court in *United States v. Under Seal*, issued an exhaustive analysis on the issue. The case involved a Philippine citizen who sought to invoke the Fifth Amendment before a Federal Grand Jury, for fear of prosecution in the Philippines, where the Court held that:

Since the Fifth Amendment would not prohibit the use of compelled incriminating testimony in a Philippine Court, it affords an immunized witness no privilege not to testify before a Federal Grand Jury on the ground that his testimony will incriminate him under Philippine law. 794 F.2d 920 at 926.

In reaching this conclusion, the Court in *United States v. Under Seal* analogized the historical extension of the Fifth Amendment to prosecutions under state law. The Fourth Circuit explained:

To determine whether the Fifth Amendment protects from compelled self-incrimination, a witness immunized under domestic law but exposed to a substantial risk of foreign prosecution, we reason by analogy to the extension of the Fifth Amendment to prosecutions under state law. When the Fifth Amendment was applied only to the federal government, the Supreme Court held that the protection it afforded did not forbid the United States from compelling testimony

4. The letter from the Swiss counsel is written in French. The letter includes a seizure order which, when translated, informs the Debtor that she and Herman Heller, are under investigation for conspiring to defraud Swiss Canto Bank/Semifora AG. In response to subsequent inquiry, the Swiss Vice Consul revealed that the Debtor, as of October 12, 1989, was listed in the Swiss governmental directory of persons with police records and that an arrest warrant had been issued against her.

5. *Hoffman v. United States*, 341 U.S. 479, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951).

6. See *In re Flanagan*, 691 F.2d 116 (2nd Cir. 1982).

7. See *Zicarelli v. New Jersey Investigation Commission*, 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972).

from a witness that would incriminate him under state law, *United States v. Murdock*, 284 U.S. 141, 52 S.Ct. 63, 76 L.Ed. 210 (1931); nor did it forbid a state government from compelling testimony that would incriminate under federal law, *Knapp v. Schweitzer*, 357 U.S. 371, 78 S.Ct. 1302, 2 L.Ed.2d 1393 (1958). Only when the Fifth Amendment was held applicable to the states, *Mallory v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), was the privilege held to protect a witness in state or federal court from incriminating himself under either federal or state law. See *Murphy v. Waterfront Commission*, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964).

The conclusion of the Court from this analogy is that the Fifth Amendment would not prohibit the use of incriminating testimony in a foreign jurisdiction. The Court went on to state:

> The Fifth Amendment privilege applies only where the sovereign compelling the testimony and the sovereign using the testimony are both restrained by the Fifth Amendment from compelling self-incrimination.

Thus, the Court concluded that the Fifth Amendment does not apply for fear of foreign prosecution and does not extend over foreign soil to protect an American citizen. The Court stated that:

> [i]nsofar as the privilege exists to promote the criminal justice system established by our Constitution, it can have **no application to a prosecution by a foreign sovereign** not similarly constrained. [emphasis supplied]

> .    .    .    .    .

> Comity among nations dictates that the United States not intrude into the law enforcement activities of other countries conducted abroad ... just as comity among nations requires the United States to respect the law enforcement processes of other nations, our own national sovereignty would be compromised

if our system of criminal justice were made to depend on the actions of foreign government beyond our control. It would be intolerable to require the United States to forego evidence legitimately within its reach solely because a foreign power could deploy this evidence in a fashion not permitted within this country. Our conclusion in this respect is reinforced by the authorities that hold, as a matter of domestic law, that the Fifth Amendment privilege does not protect the witness against all adverse uses of his compelled testimony but only those adverse uses specifically proscribed by the Fifth Amendment ... (emphasis supplied).

According protection to a United States citizen for fear of foreign prosecution has not been authorized by any Federal Court. Debtor maintains that there is authority for invoking the Fifth Amendment for fear of foreign prosecution and that, in fact, this authority is the majority view.[8] Debtor relies upon *Yves Farms, Inc. v. Rickett*, 659 F.Supp. 932 (M.D.Ga.1987) to stand for this premise. Debtor's contentions are misguided. The facts in *Yves* are distinguishable from the case at bar. In *Yves* the Court specifically indicated the set of facts in the case are unique therefore commanding a different outcome from similar cases.[9]

In the *Yves* case the plaintiff, a French citizen, who voluntarily availed himself of the United States judicial system, refused to answer questions on a collateral matter that might initiate foreign prosecution. The *Yves* Court stated that the consideration of comity among nations was not applicable to the facts in *Yves*. The Court stated that:

> These considerations are inapplicable in the case of a foreign plaintiff whose testimony is being compelled by private party defendants.

The *Yves* Court recognized that the outcome in *Yves* was inapposite of the existing authority and reasoned that:

---

**8.** See Debtor's Supplementary Brief (November 6, 1990).

**9.** See *United States v. (Under Seal)*, 794 F.2d 920 (4th Cir.1986); *In re Parker*, 411 F.2d 1067 (10th Cir.1969).

The court is mindful under the principle of *Ashwander v. Tennessee Valley Authority*, [t]hat the holding of the Court is strictly limited to the facts in this case. 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1936).

Thus, the *Yves* Court determined that its finding was a minority view and, in fact, an aberration of existing authority.

Although the Supreme Court has not addressed the issue of whether the Fifth Amendment accords protection to a witness for fear of foreign prosecution, the Court in *Zicarelli v. New Jersey Investigation Commission*, resolved the issue by identifying preliminary requirements that a claimant must meet prior to invoking the Fifth Amendment. In *Zicarelli*, the witness was asked certain direct questions that could link him to foreign prosecution. The witness was asked "in what geographical area do you have costa nostra responsibilities."? In the case *sub judice*, the Debtor has refused to answer any questions that relate to foreign transactions and not just specific questions.

The requirements for invoking the Fifth were revisited in *In re President's Commission on Organized Crime*, 763 F.2d 1191 (11th Cir.1985). The appellant was asked questions regarding his knowledge on certain aspects of organized crime as a result of an executive investigation initiated by President Reagan. Although a warrant had been issued in Italy on drug trafficking charges, Italian officials requested extradition but was refused by the State Department. The Court in *Zicarelli* held that:

A claimant asserting that a Fifth Amendment privilege is necessary to protect him from the threat of foreign prosecution must demonstrate first that the information that might be disclosed through his testimony might incriminate him under foreign law, and second that his fear of foreign prosecution is real and substantial rather than merely speculative.

The *Zicarelli* Court went on to delineate several factors of equal weight to be considered prior to invoking the Fifth Amendment. Similarly, the factors to be determined in accessing whether there is a fear of foreign prosecution have been expanded in *In re Flanagan*, 691 F.2d 116 (2nd Cir. 1982).

In determining whether a reasonable fear of prosecution exists, the Court *In re Flanagan*, 691 F.2d 116, 121 (2nd Cir.1982), identified five elements the Court should consider:

whether there is an existing or potential foreign prosecution of her; what foreign charges could be filed against her; whether prosecution of them would be initiated or furthered by her testimony; whether any such charges would entitle the foreign jurisdiction to have her extradited from the United States; and whether there is a likelihood that her testimony given would be disclosed to the foreign government.

In *Flanagan*, deference was given to the extradition factor. The Court looked to the existence of an extradition treaty, its scope, and whether there was an effort to enact a treaty between the United States and Ireland calling for extradition. The *Flanagan* Court found that the plaintiff could not be extradited, which contributed to the finding that there was not a reasonable fear of foreign prosecution. In the case *sub judice*, the Debtor indicates that even if a current extradition treaty is not in effect, that it is just a matter of time before one becomes effective. To demonstrate this contention, the Debtor refers to an out-of-state court statement by a member of the U.S. State Department as proof that a treaty between Switzerland and the United States has been signed by both governments, although the treaty has not been submitted to the United States Senate for ratification.[10]

---

**10.** Debtor's counsel asserts that he spoke with someone in the State Department who indicated that a treaty was pending and that she expected it to be ratified. Purportedly, the Treaty would call for the extradition of potential defendants involving criminal charges. The proposed treaty's reach to the allegations against the Debtor was not developed on the record. Will it cover

The ratification of a new treaty is not a certainty. It is speculation to indicate that the United States will sign a new treaty with Switzerland. It is speculation to say that the treaty will be ratified. The Court is merely left with Debtor's unsubstantiated arguments.

In light of *Flanagan*, this Court finds that the Debtor has not satisfied the threshold requirement underscored in *Flanagan* in order to invoke the Fifth Amendment, that is, a real and substantial fear of prosecution. The assertion of the Fifth Amendment right against self-incrimination is predicated upon a reasonable fear of prosecution. It has long been held that the Fifth Amendment protects against real dangers, not remote and speculative possibilities.[11] In accordance with the record made before this Court, the Debtor has only speculated that she may be subject to criminal prosecution. The Debtor's speculations are not sufficient enough to cause this Court to grant the Debtor the right to invoke the Fifth Amendment right against self-incrimination. The Debtor must exhibit real and substantial fears of foreign prosecution.

### Real and Substantial Fear

The law is clear that the right to assert the Fifth Amendment is based upon a real and substantial fear of foreign prosecution. The standard [p]rotects against real dangers, not remote and speculative possibilities. *In re Grand Jury Proceedings*, 748 F.2d 100 (2nd Cir.1984). Furthermore, the fear must be based upon objective facts as distinguished from ... subjective speculation *Flanagan*.

Debtor relies upon *In re Morganroth* in its analysis for determination of what constitutes a reasonable fear of foreign prosecution. In that case, the Court held that

[s]ufficient evidence is presented if a court can, by the use of reasonable inference or judicial imagination, conceive a sound basis for a reasonable fear of prosecution. Similarly, the Supreme Court in *Hoffman v. United States*, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951) has held that "The trial judge in appraising the [Fifth Amendment] claim, must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence." The Debtor then outlines the factor that this Court should evaluate in this case as a basis for finding a substantial fear.[12] The Court in *Hoffman* gives great deference to the trial judge's appraisal of the circumstances. In the instant case, this Court accordingly has determined that there is no reasonable inference that the Debtor has a sound basis for a reasonable fear of prosecution.

### Link in the Chain of Evidence

A reasonable fear of foreign prosecution is demonstrated by establishing some sort of nexus between the protected testimony and the probability of prosecution. *Flanagan* has provided that "the apprehension must be a real and reasonable one, based on objective facts as distinguished from subjective speculation", and there must be "a particularized showing that the testimony may incriminate the witness in the foreign prosecution."[13]

The Debtor was not able to articulate a sufficient nexus between answering questions surrounding a 341 Creditors Meeting and a reasonable fear of prosecution. The Debtor would have this Court rely upon out-of-court statements and unsupported documents in an effort to conclude that the Debtor has a real and substantial fear of foreign prosecution. Even if such a treaty were in force, the Debtor has yet to estab-

---

the charges lodged? Will it allow extradition for charges filed prior to ratification by the United States Senate? This Court was not advised at the hearing.

11. See *Zicarelli v. New Jersey Investigation Commission*, 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972).

12. Debtor's Supplemental Brief, pp. 2 (November 6, 1990) states that the Court should recog-

nize Debtor's international right to travel and the availability of alternative sources of the information sought.

13. The Debtor has not articulated a particularized reason for a fear of foreign prosecution. She has not indicated how her proposed testimony will link her to the pending investigation by the Swiss government.

lish a sufficient nexus between the criminal charges and her answering questions by her creditors.

In the case at bar, Debtor asserts that she has substantially met the factors to be considered by meeting four out of the five elements required.[14] The determination of what constitutes a fear of foreign prosecution is not determined by substantially meeting the required elements. This Court considers the fear of extradition to be a major element that must be considered. Clearly, the probability of being prosecuted in a foreign country generates reasonable fears. Debtor's authority generally rests upon a perceived threat that a person may find herself in a particular foreign jurisdiction by some sort of force such as extradition or kidnapping. *Flanagan; Environmental Tectonics v. W.S. Kirkpatrick, Inc.,* 847 F.2d 1052 (3rd Cir.1988). Presumably, if the Debtor does not face extradition or some other means of forceful entry into the feared foreign jurisdiction, then fear of prosecution is diminished and indeed becomes non-existent.

In scrutinizing the instant case, the Debtor has not met her burden to convince this Court that there exists a real and substantial fear of foreign prosecution.[15] The Debtor has failed to show that there is a real and substantial fear and has not approached a showing of a particularized fear of prosecution. Debtor's proofs amount to mere speculation and a subjective showing at best. The Debtor has failed to demonstrate that a treaty exists or that ratification of a treaty would result in her extradition to face charges in Switzerland. Finally, the Debtor has not proven that if charges exist, whether the testimony in a creditors meeting could be used in the "anticipated" foreign prosecution.

Additionally, Debtor has not established that the response to certain questions in a 341 meeting will, in any way, incriminate her. Debtor merely indicates that as a result of a warrant being issued and charges being instituted against her for bank fraud in Switzerland that any disclosure of her financial affairs in a creditor's meeting would incriminate her in Switzerland. At best, her fears appear too speculative and does not satisfy the first element under the *Flanagan* test.

*The Right to Travel*

■ Debtor asserts that her right to travel freely will be prohibited if she is compelled to respond to questioning. Debtor's assertions are misplaced. Although there exists a constitutional right to travel, this right is not without its limitations. The right to travel abroad is not a fundamental right and is therefore accorded less protection. In *Kent v. Dulles,* 357 U.S. 116, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958), the Supreme Court stated that:

> personal rights cannot be recognized as fundamental or not fundamental ... The right to travel abroad is certainly a very important right. However, it should not be placed on equal footing with the right to travel interstate. International travel has traditionally been subject to more controls than has interstate travel. For example, a passport must normally be obtained ... and in some circumstances the government has legitimately imposed restriction on travel.

■ In the case at bar there exists a barrier to the Debtor travelling abroad, i.e., the warrant that the parties agree exists for the arrest of the Debtor. The warrant operates as a much greater risk than responding to questions at a 341 meeting. The Debtor, in the case at bar, plans to continue her dealings and work in Europe in spite of the warrant that is issued for her arrest. The Debtor's action flies in the face of one who fears prosecution and who asserts a constitutional right to travel.[16]

---

14. The Debtor indicates that all of the factors delineated under the *Flanagan* test have been met except for the extradition factor.

15. It is for the Debtor to "seek judicial determination on each claim of privilege with respect to each specific category of transaction (he) deems

incriminatory." *In re Morganroth,* 718 F.2d 161 (6th Cir.1983).

16. Again, if the Debtor's testimony at a Meeting of Creditors could be used to extradite her from France to Switzerland upon her arrival in France, we have not been informed of the law

The Debtor's actions further serve to disavow the notion that she has a real and substantial fear of foreign prosecution. The Debtor's compelled testimony will not impinge upon her right to travel abroad.

## CONCLUSION

In order to invoke the Fifth Amendment for fear of criminal prosecution in a foreign jurisdiction, the Debtor must demonstrate a fear of foreign prosecution. Such fear must be reasonable and not speculative and remote. The testimony that Debtor puts before this Court is merely speculative. The Debtor asserts that she may be prosecuted in Switzerland if a treaty between the United States and Switzerland is ratified. Furthermore, the Debtor has not presented credible evidence that such a treaty will be ratified, or that she could be extradited under its provisions for charges filed prior to ratification. Moreover, the Debtor has not presented any evidence in connection with the testimony sought and how it will impact upon her fear of foreign prosecution.

This is indeed a different and important area of the law. In fact, Chief Justice Burger suggested in granting a Stay Pending Appeal in *Araneta v. United States*, 478 U.S. 1301, at 1303, 107 S.Ct. 1 at 2, 92 L.Ed.2d 751 (1986).

> [Substantial confusion exists on this issue] of whether the privilege against self-incrimination protects a witness from being compelled to give testimony that may later be used against him in a foreign prosecution.

This Court reiterates that there are substantial factors that must be met as a prerequisite to invoking the Fifth Amendment. These factors as delineated in *Flanagan* have not all been met. In addition, the Court finds that the Debtor has failed to articulate a particularized showing that the testimony may incriminate her. Rather, Ms. Moses seeks to assert a blanket Fifth Amendment privilege for any question pertaining to foreign transactions. She has failed to articulate how answering each question would incriminate her. If she were allowed to assert the Fifth in a blanket fashion, it would be tantamount to issuing a license to prevent a judicially fair resolution to the pending bankruptcy proceedings. It would also serve to thwart almost any criminal investigation having international consequences.

Finally, the Fifth Amendment does not prohibit the compulsion of testimony when a foreign sovereign could use that testimony against the witness in a criminal prosecution. The Debtor has failed to demonstrate that she has a fear of foreign prosecution that is real and reasonable. Debtor's arguments are too remote and speculative. Debtor Ilene Ruth Moses is compelled to testify at the Creditors 341 Meeting, pursuant to 11 U.S.C. 341.

and circumstances that would permit such an occurrence.